UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 20-1558 JGB (KKx)** | Date | September 21, 2022 |
| Title | ***David Robertson v. Ashley Furniture Industries, Inc.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:     **Order (1) GRANTING IN PART AND DENYING IN PART Defendant's Motion for Summary Judgment (Dkt. No. 20); and (2) VACATING the September 26, 2022 Hearing (IN CHAMBERS)**

Before the Court is a motion for summary judgment or, in the alternative, partial summary judgment filed by Defendant Ashley Furniture Industries, Inc. ("Ashley Furniture"). ("Motion," Dkt. No. 20.)  The Court finds this matter appropriate for resolution without a hearing. Fed. R. Civ. P. 78; L.R. 7-15.  Upon consideration of the papers filed in support of and in opposition to the Motion, the Court GRANTS IN PART AND DENIES IN PART the Motion. The hearing set for September 26, 2022 is VACATED.

## I.  BACKGROUND

On May 29, 2020, Plaintiff David Robertson ("Robertson") filed a complaint against Ashley Furniture and Does 1 through 100 (collectively, "Defendants") in the Superior Court of the County of San Bernardino.  ("Complaint," Dkt. No. 1-1.)  The Complaint asserts six causes of action, five of which are alleged under the California's Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, et seq.: (1) disability discrimination in violation of FEHA; (2) failure to accommodate disability; (3) failure to engage in interactive process; (4) hostile work environment; (5) retaliation; and (6) wrongful termination in violation of public policy.  (See id.) Mr. Robertson alleges damages in an amount exceeding $250,000.00.  (Id., "Prayer for Damages.")  Ashley Furniture answered on August 5, 2020.  ("Answer," Dkt. No. 1-6.)

On August 5, 2020, Ashley Furniture removed based on diversity jurisdiction.  ("Notice of Removal," Dkt. No. 1.)

On November 22, 2021, Ashley Furniture filed the instant Motion.  (See Mot.)  In support, it filed the following documents:

- Defendant's Statement of Undisputed Facts ("DSUF," Dkt. No. 20-1);
- Declaration of Kathy Lerner with attached exhibits ("Lerner Declaration," Dkt. No. 20-2);
- Declaration of Lewie Martinez with attached exhibits ("Martinez Declaration," Dkt. No. 20-3); and
- Declaration of Shanda Ramos with attached exhibits ("Ramos Declaration," Dkt. No. 20-4).

After the Court granted leave for an extension, Mr. Robertson filed his opposition on December 20, 2021.  ("Opposition," Dkt. No. 30.)  In support, he filed the following documents:

- Plaintiff's Separate Statement of Disputed Facts and Genuine Disputes ("PSGD," Dkt. No. 30-1 at 1–92);
- Plaintiff's Statement of Undisputed Facts ("PSUF," Dkt. No. 30-1 at 92–102);
- Declaration of Heather K. Cox ("Cox Declaration," Dkt. No. 30-2); and
- Attached exhibits ("Plaintiff's Exhibits A through R," Dkt. No. 30-3).

On December 27, 2021, Ashley Furniture replied.  ("Reply," Dkt. No. 31.)  It filed the following additional documents:

- Defendant's Response to PSUF ("Defs.' Response to PSUF," Dkt. No. 31-1); and
- Defendant's Objections to PSUF ("Defs.' Objections to PSUF," Dkt. No. 31-2).

## II. FACTS

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted.  They are "admitted to exist without controversy" for purposes of the Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.  The Court considers the parties' objections where necessary.[1]  All other objections are OVERRULED AS MOOT.

---

[1] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of Cal., 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").  Similarly, Defendants object frequently on hearsay grounds.  Most of these objections are boilerplate recitations, and involve portions of deposition testimony that are corroborated or testimony by the declarant.  Where the declarant's testimony is available and supports the objected-to-statement, there is no indicia of unreliability to support exclusion.  Fed. R. Evid. 801, 802.

On October 29, 2018, Defendant Ashley Furniture Industries, LLC ("Ashley Furniture") hired Plaintiff David Robertson ("Robertson") to work at its Distribution Center in Redlands, California.[2]  (DSUF ¶ 1.)  Ashley Furniture asserts that it hired Mr. Robertson as a "Distribution Center Laborer" ("DC Laborer"), whereas Mr. Robertson claims that his position was as a "receiver" and/or "unloader."  (Id. ¶ 2; PSGD ¶ 2.)  At Ashley Furniture's Redlands facility, all employees in the Shipping and Receiving Department fall within the DC Laborer job description.  (DSUF ¶ 4.)

Mr. Robertson unloaded trucks that came into the center's Case Goods Receiving Department.  (Id. ¶ 2.)  His job was "a physical one."  (Id. ¶ 5.)  Though the parties dispute the exact physical requirements of his position, it is undisputed that at the time he was hired, Mr. Robertson was physically capable of satisfying the requirements of his job.  (Id.; PSGD ¶ 5.)

**A.  Left Hand Injury**

On February 21, 2019, Mr. Robertson injured his left thumb at work while unloading a truck with another employee ("Left Hand Injury").  (DSUF ¶ 7.)  The other employee had dropped a box on Mr. Robertson's thumb.  (Id.)  Mr. Robertson reported the injury to his supervisor after which Ashley Furniture sent him to the Distribution Center's medical office for an initial evaluation by the "Med Tech."  (Id. ¶¶ 9–10.)  Ashley Furniture sent Mr. Robertson for further medical evaluation and treatment at outside medical facilities.  (Id. ¶ 11.)

On February 26, 2019, Mr. Robertson was first seen by Dr. Robert Fox following an emergency room visit.  (Id. ¶ 12.)  Dr. Fox recommended that Mr. Robertson be placed on modified work duty with no use of his left hand.  (Id.)  Following the February 26, 2019 visit, Ashley Furniture placed Mr. Robertson on modified duty in accordance with Dr. Fox's recommendation and with the prescribed restrictions of no use of the left hand.  (Id. ¶ 13.)

Mr. Robertson remained on modified duty from February 2019 to October 2, 2019.  (Id. ¶ 22.)  While on modified duty, Mr. Robertson remained assigned to the Case Goods Receiving Department.  (Id. ¶ 14.)  He performed tasks, including picking up trash.  (Id.; PSGD ¶ 14.)  Mr. Robertson was required to wear a reflective vest like all other employees on modified duty.  (DSUF ¶ 88.)  He contends that he was awarded a full point on his attendance record for leaving his shift early, rather than one-third of a point pursuant to Ashley Furniture's employee handbook.  (Id. ¶ 92; PSGD ¶ 92.)

While Mr. Robertson was on modified duty, Juan Barragan in the Shipping Department requested that Mr. Robertson perform tasks for him on a few occasions.  (DSUF ¶ 89.)  Mr.

---

[2] Mr. Robertson disputes this fact on the basis that his paystubs show that "Ashley Furniture Industries, Inc." hired him.  (PSGD ¶ 1; Cox Decl., Ex. G.)  However, he fails to explain whether this entity is separate from Ashley Furniture or a material fact.  Accordingly, the Court finds that it is undisputed that Ashley Furniture hired Mr. Robertson.

**CIVIL MINUTES—GENERAL**  Initials of Deputy Clerk mg

Barragan assigned him to "a special job," which entailed scraping stickers off pallet jacks and forklifts with a "scraper." (Id. ¶ 90.) Mr. Robertson claims that Mr. Barragan called him "light duty" instead of his name. (Id. ¶ 91; PSGD ¶ 91.)

On March 7, 2019, Dr. Jason A. Solomon placed Mr. Robertson on temporary total disability. (Id. ¶ 15.) Dr. Solomon further recommended that Mr. Robertson be placed off work. (Id.) Ashley Furniture complied with this recommendation. (Id.) As a result of the Left Hand Injury, Mr. Robertson was diagnosed with a displaced sesamoid fracture and ligament injury in the left thumb. (Id. ¶ 16.)

On June 5, 2019, Dr. Solomon examined Mr. Robertson and released him to return to modified duty. (Id. ¶ 17.) Dr. Solomon prohibited Mr. Robertson from using his left hand. (Id.)

On July 18, 2019, Mr. Robertson completed occupational therapy with improvement and he requested to be returned to regular duty. (Id. ¶ 18.) On July 25, 2019, Dr. Solomon changed Mr. Robertson's work status to "no lifting with the left arm." (Id. ¶ 19; PSGD ¶ 19.) Sometime after he returned to regular duty, Mr. Robertson was told that he was not "keeping up with … a number amount of pallets and the truck, that I was taking too long." (Pl.'s Depo. 93:16-21.)

On September 25, 2019, Dr. Solomon saw Mr. Robertson. (DSUF ¶ 20; PSGD ¶ 20.) Either that day or a few days later, Dr. Solomon deemed that Mr. Robertson had reached maximum medical improvement on his left hand. (Id.) Dr. Solomon prescribed the following permanent restrictions on Mr. Robertson's left hand: "no lifting, pushing, or pulling over 20 lbs. with left upper extremity." (DSUF ¶ 20.)

Ashley Furniture received Dr. Solomon's restrictions. (Id. ¶ 41; PSGD ¶ 41.) Lewie Martinez, Ashley Furniture's Workers' Compensation Administrator at the Redlands facility, expressed an intent to initiate an interactive meeting with Mr. Robertson. (Martinez Decl. ¶ 17; Cox Decl., Ex. L.) Before the interactive process meeting could take place, Mr. Robertson suffered a second work-related injury. (DSUF ¶ 44; PSGD ¶ 44.)

**B. Right Hand Injury**

On September 22, 2019, Mr. Robertson sustained a second work-related injury to his right hand during modified duty ("Right Hand Injury"). (DSUF ¶ 21.) He had been scraping stickers off pallet jacks and forklifts in the Shipping Department. (Id.) Prior to this date, Mr. Robertson had not suffered any injuries to or had work restrictions regarding his right hand. (Id. ¶ 23.) Mr. Robertson is right-handed. (Id. ¶ 24.)

Mr. Robertson reported the Right Hand Injury on October 2, 2019. (Id. ¶ 21.) That same day, he was evaluated for the Right Hand Injury at Healthpointe. (Id. ¶ 25.) He was diagnosed with a strain of the right hand, given a brace for the right wrist, and placed on modified duty with "limited use of the right hand and no forceful pulling or squeezing with the right hand." (Id.)

---

**CIVIL MINUTES—GENERAL**

On October 3, 2019, Dr. Gabriel Martin Del Campo diagnosed Mr. Robertson with an unresolving right hand strain. (Id. ¶ 26.) Dr. Del Campo recommended the placement of Mr. Robertson on modified work duty with limited use of his right hand and no forceful pulling or squeezing permitted. (Id.) On October 3, 2019, Mr. Martinez placed Mr. Robertson on indefinite leave without a discussion of accommodations. (DSUF ¶ 44; PSUF ¶ 24.)

On November 21, 2019, Dr. Solomon evaluated Mr. Robertson for the Right Hand Injury. (DSUF ¶ 30.) He diagnosed Mr. Robertson with right index finger trigger finger, right-wrist De Quervain's tenosynovitis and numbness in the right hand." (Id.) His work status was changed to no lifting, pulling, or pushing more than five pounds. (Id.) However, Ashley Furniture had terminated Mr. Robertson's employment by this time. (Id. ¶¶ 30, 85.)

## C. October 16, 2019 Call

On October 16, 2019, Mr. Martinez called Mr. Robertson and intended to conduct an interactive process. (DSUF ¶ 47.) The parties dispute whether Mr. Robertson met with Mr. Martinez prior to this call and, if so, how many times. (Id. ¶ 45; PSGD ¶ 45.) The parties also dispute whether the October 16, 2019 meeting was based solely on the Left Hand Injury or on both the Left Hand Injury and Right Hand Injury. (DSUF ¶ 48; PSGD ¶ 48.)

During the October 16, 2019 call, Mr. Martinez reviewed the job description for the DC Laborer position with Mr. Robertson. (DSUF ¶¶ 55; PSGD ¶¶ 47, 55.) Mr. Robertson suggested that as an accommodation he could work as a continual trainer, be promoted to a Lead position in the Case Goods Receiving Department, do an office job, continue doing light duty work, or work as a "scanner" who scans "everything that came off the truck." (DSUF ¶¶ 58, 61, 63, 66, 68.) Mr. Robertson did not identify any specific office job position for which he was qualified. (Id. ¶ 63.)

## D. Termination

Following the October 16, 2019 call, Mr. Martinez determined that Mr. Robertson would be "unable to finish a whole day of work required by the DC Laborer position of unloading or unloading product from trailers/containers and transfer finished goods production/distribution center location and loading/unloading areas." (Id. ¶ 72.) Mr. Martinez provided the Accommodation Form to Ashley Furniture's Human Resources Department and advised that there was no way to accommodate Mr. Robertson's restrictions. (Id. ¶ 73.)

Ashley Furniture's Human Resources Department determined that there were no available positions that would accommodate Mr. Robertson's restriction of "no lifting, pushing or pulling over 20 lbs. with the left upper extremity." (Id. ¶ 79.)

On October 31, 2019, Ashley Furniture sent a letter to Mr. Robertson that stated that it could not accommodate his work restrictions. (Id. ¶ 80.) Ashley Furniture invited Mr. Robertson to contact it if there were positions that he believed were available to him. (Id. ¶ 82.)

On November 14, 2019, Mr. Robertson called Mr. Martinez after receipt of the nonaccommodation letter.  (Id. ¶ 84.)  The parties dispute whether Mr. Robertson told Mr. Martinez that he agreed or disagreed with the decision.  (PSGD ¶ 84.)  On November 20, 2019, Mr. Robertson's termination became effective.  (DSUF ¶ 85.)

### III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact.  Fed. R. Civ. P. 56(a).  The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  If the non-moving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  Celotex, 477 U.S. at 325.  Instead, the moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial."  Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  Id.  However, if the moving party has sustained its burden, the non-moving party must show that there is a genuine issue of material fact that must be resolved at trial.  Celotex, 477 U.S. at 324.  The non-moving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial.  Id. at 322; Anderson, 477 U.S. at 252.  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson, 477 U.S. at 248. "The non-moving party must show more than the mere existence of a scintilla of evidence."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the non-moving party.  Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991).  Summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the non-moving party based on the record taken as a whole.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).

### IV. DISCUSSION

Ashley Furniture moves for summary judgment on all six of Mr. Robertson's FEHA claims.  (See Mot.)

## A.  Disability Discrimination in Violation of FEHA (Count One)

In Count One, Mr. Robertson asserts a claim for discrimination based on his physical disability.  (Compl. ¶¶ 16-22.)  Ashley Furniture moves to dismiss the claim on the basis that he is unable to prove two elements of his prima facie case.  (Mot. at 11–13.)

FEHA prohibits employment discrimination on the basis of protected characteristics, including physical or mental disability.  Cal. Gov't Code § 12940(a).  "The elements of a disparate treatment disability discrimination claim are that the plaintiff (1) suffered from a disability or was regarded as suffering from a disability, (2) could perform the essential duties of a job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability."  Zamora v. Sec. Indus. Specialists, Inc., 71 Cal. App. 5th 1, 31 (2021).

"California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination…."  Guz v. Bechtel Nat'l, Inc., 24 Cal. 4th 317, 354 (2000).  This framework applies to wrongful termination claims based on disability discrimination.  See generally id.; Sandell v. Taylor–Listug, Inc., 188 Cal. App. 4th 297 (2010).  Under this framework:

> A plaintiff must first establish a prima facie case of discrimination.  If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision.  Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994) (citation omitted); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).

Here, however, "the burden is reversed … because the defendant who seeks summary judgment bears the initial burden" in an employment discrimination action.  Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011) (interpreting FEHA) (quotations and citations omitted); Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 224 (1999).  As such, the defendant bears the initial burden to "show either that (1) plaintiff [can]not establish one of the elements of the FEHA claim or (2) there [is] a legitimate, nondiscriminatory reason for its actions."  Lucent Techs., Inc., 642 F.3d at 745 (citations and quotations omitted).

//
//

**CIVIL MINUTES—GENERAL**

### 1. Prima Facie Case

Ashley Furniture argues that Mr. Robertson's prima facie case fails because he cannot prove that (1) he was able to perform the essential functions of the Distribution Center Laborer ("DC Laborer") job with or without accommodations, or that (2) Ashley Furniture terminated his employment because of his disability. (Mot. at 11–13.) It does not dispute that Mr. Robertson suffers from a disability.

### a. Essential Functions

An employee must "show that he or she is a qualified individual under [] FEHA (i.e., that he or she can perform the essential functions of the job with or without reasonable accommodation)." Green v. State of California, 42 Cal. 4th 254, 260 (2007). Under the first part of this test, "'essential functions' means the fundamental job duties of the employment position the individual with a disability holds or desires." Cal. Gov't Code § 12926(f). They do "not include the marginal functions of the position." Id. A job function may be considered essential when: (A) "the reason the position exists is to perform that function"; (B) there is a "limited number of employees available among whom the performance of that job function can be distributed"; or (C) "[t]he function may be highly specialized, so that the incumbent in the position is hired based on expertise or the ability to perform a particular function." Id. § 12926(f)(1)(A)-(C). A court may consider the following non-exhaustive types of evidence to determine whether a particular function is essential:

(A)  The employer's judgment as to which functions are essential.
(B)  Written job descriptions prepared before advertising or interviewing applicants for the job.
(C)  The amount of time spent on the job performing the function.
(D)  The consequences of not requiring the incumbent to perform the function.
(E)  The terms of a collective bargaining agreement.
(F)  The work experiences of past incumbents in the job.
(G)  The current work experience of incumbents in similar jobs.

Id. § 12926(f)(2)(A)-(G). An employer's written description of a position is evidence of a job's essential functions, but "such evidence is not conclusive." Cripe v. City of San Jose, 261 F.3d 877, 887 (9th Cir. 2001) (considering job description in disability discrimination case brought under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101(b)(1)).

The parties disagree over the essential functions of Mr. Robertson's job. Ashley Furniture asserts that every requirement of the DC Laborer position applies, including the ability to "lift and carry objects up to 100 lbs. and manipulate up to 250 lbs." and "transport loads of up to 100 lbs. frequently and manipulate up to 250 lbs. occasionally."[3] (Mot. at 12; DSUF ¶ 3; "Job

---

[3] Ashley Furniture identifies other essential functions, including the ability to "perform repetitive tasks with both hands (including keyboarding, handwriting and office/POS equipment

Description," Martinez Decl., Ex. A.)  In Ashley Furniture's view, the evidence shows that Mr. Robertson cannot perform these functions.  (Mot. at 12–13; DSUF ¶¶ 28–29, 34–35.)  Mr. Robertson responds that the DC Laborer Job Description is overly broad and not tailored to the specific role he held.  (Opp'n at 10.)  He further argues that he has raised genuine disputes of material fact to preclude summary judgment.  (Id. at 10–11.)

Here, it is undisputed that Mr. Robertson had restrictions on both hands, which prohibited him from "lifting, pushing, or pulling more than 5 lbs. with the right extremity" and "lifting, pushing, or pulling more than 20 lbs. with the left extremity."  (DSUF ¶¶ 25–27, 33–34, 38; PSGD ¶ 38.)  If the ability to lift, carry, manipulate, and transport objects up to 100 pounds and 200 pounds is an essential function, then Mr. Robertson's medical restrictions limit his ability to carry out these duties without reasonable accommodations.  As such, the Court must determine whether no reasonable jury could conclude that the above requirements are not essential functions of Mr. Robertson's role.

Wright v. United Parcel Service, Inc., 609 F. App'x 918 (9th Cir. 2015), is directly on point.  There, the Court considered whether "lifting [ ] packages [weighing more than 40 pounds unassisted]" was an essential function of a UPS utility driver.  Id. at 919.  UPS had submitted evidence favorable to this interpretation, including: (1) "UPS's written job description," which identified the ability to "lift, lower, push, pull, leverage and manipulate equipment and/or packages weighing up to 70 pounds" and "assist in moving packages weighing up to 150 pounds" as essential functions; (2) the declaration of a UPS human resources operation manager, who confirmed that this lifting requirement was essential; and (3) plaintiff's deposition testimony that "utility drivers were required to perform these tasks."  Id. at 919–20.

However, Wright noted that the job description was "of limited evidentiary value" because it was "not limited to utility drivers" and contained a disclaimer that "the essential functions of this job may vary greatly."  Id. at 920.  In addition, UPS "offered scant evidence of the kinds suggested in § 12926(f)."  Moreover, the plaintiff had testified at her deposition that the packages on her routes typically weighed less than 40 pounds and that she only encountered heavier packages "once a week."  Id.  Though she had also testified that she "frequently" lifted packages in excess of 50 pounds, the Wright Court found that these statements were not probative of whether lifting more than 40 pounds was essential because it "did not attempt to estimate the relative time spent on larger as opposed to smaller packages."  Id.  Based on this record, Wright held that the record contained conflicting evidence and that a reasonable jury could conclude that the purported lifting requirement was "a marginal function."  Id. at 919–20.

The facts before this Court are like those in Wright.  Ashley Furniture primarily relies on the DC Laborer Job Description, which describes the "physical effort" required as follows:

---

operation)" and to "bend, squat, stoop, kneel, crouch, and reach at or above shoulder level." (DSUF ¶ 3.)  However, its arguments and evidence primarily focus on Mr. Robertson's ability to lift, carry, manipulate, and transport heavy objects.  Accordingly, the Court finds that Ashley Furniture has not met its initial burden of production to show that additional tasks are essential.

**Lifting**: Must be able to lift and carry objects up to 100lbs., manipulate up to 250lbs occasionally. (75%-100%)

**Pulling/Pushing:** Will transport loads of up to 100lbs., frequently, manipulate up to 250lbs occasionally. (50%-74%)

Job Description at 2.  Ashley Furniture proffers the declarations of Lewie Martinez, its Workers' Compensation Administrator, and Shanda Ramos, its former Senior Human Resources Manager, who both confirm that the lifting requirement in the Job Description is an essential function.  (Martinez Decl. ¶ 7; Ramos Decl. ¶ 20.)  Ashley Furniture also submits Mr. Robertson's deposition testimony, in which he testified that his job required him to lift objects as heavy as 200 pounds using both hands.  (Pl.'s Depo. 42:3-43:8.)

But "the evidence is not one sided."  Wright, 609 F. App'x at 920.  As in Wright, the DC Laborer Job Description covers multiple positions in five different departments.  (PSUF ¶¶ 3–7.)  In addition, it states that each assigned position has "standard operating procedure[s]" that are not listed in the document.  (Job Description at 1.)  Mr. Martinez acknowledged in his deposition that the Job Description "covers multiple conditions."  (Martinez Depo. 51:2-11, 52:7-23, 87:6-24.)  Other than the Job Description, Ashley Furniture provides scant evidence of the type listed under Cal. Gov't Code § 12926(f)(2) to support its position.  Under these facts, a reasonable jury could conclude that the Job Description is probative, but not conclusive.  Mr. Robertson also submits other conflicting evidence.  (PSGD ¶ 5.)  He testified that he originally applied for and worked in "case goods," which, according to Ashley Furniture's 30(b)(6) expert, handled "smaller items."  (Pl.'s Depo. 31:5-9; Castro Depo. 96:8-18.)  Juan Barragan, Mr. Robertson's supervisor in the Shipping Department, testified that the number of light units versus heavy units an employee handles within the departments varies daily.  (Barragan Depo. 88:11-90:17.)

Construing this evidence in the light most favorable to Mr. Robertson, the Court finds a triable issue on whether the ability to lift and carry objects up to 100 pounds and manipulate objects up to 250 pounds are essential functions of Mr. Robertson's position.  A reasonable jury could conclude that such a requirement is marginal, rather than essential.  Accordingly, the Court DENIES the Motion to the extent that Ashley Furniture claims that this requirement is an essential function of Mr. Robertson's job.

### b.  Reasonable Accommodations

Under the second part of the "qualified individual" test, Ashley Furniture must show that even with reasonable accommodations, Mr. Robertson could not perform the essential functions of his job.  Lucent Techs., Inc., 642 F.3d at 745.  FEHA provides that "[r]easonable accommodation" may include "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position, [and] acquisition or modification of equipment or devices."  Cal. Gov't Code § 12926(p)(2).

Ashley Furniture argues that "no accommodation was possible due to the physical labor required by" Mr. Robertson's position. (Mot. at 12.) It is undisputed that during an October 16, 2019 meeting with Mr. Martinez, Mr. Robertson requested the following five accommodations: (1) reassignment as a continual trainer, (2) promotion as a "Lead," (3) reassignment to an unspecified office job, (4) reassignment as a "scanner," and (5) continued reassignment on modified duty. (DSUF ¶¶ 58, 61, 63, 66, 68.) According to Ashley Furniture, these accommodations were unreasonable because they required the same physical functions as Mr. Robertson's role, Mr. Robertson was unqualified for the requested position, or the requested position did not exist. (Mot. at 5–6, 12–13.)

Mr. Robertson argues that he has raised triable issues on whether Ashley Furniture could have reassigned him to a vacant position, including in departments like E-Commerce that do not require heavy lifting. (Opp'n at 11.) He further contends that Ashley Furniture failed to consider his ability to continue employment as a "light duty worker." (Id. at 11–12.)

### i.   Continual Trainer

Ashley Furniture first argues that reassignment of Mr. Robertson as a "continual trainer" was unreasonable because the essential functions of the position are the same as that of a DC Laborer. (Mot. at 6, 12.) Ashley Furniture contends that because Mr. Robertson was unable to lift and carry objects up to 100 pounds and manipulate objects up to 250 pounds, he could not perform the duties of a continual trainer. (Id. at 12.)

The Court finds that triable issues of fact preclude it from a determination that Mr. Robertson could not perform the essential functions of a continual trainer. The parties do not disagree that a continual trainer must physically demonstrate how to lift a box to employees. (DSUF ¶ 60.) The disputes again arise from whether the ability to lift, carry, and manipulate heavy objects up to 100 pounds and 250 pounds, respectively, is an essential function. According to Ms. Ramos's declaration and Mr. Martinez's deposition testimony, a trainer must fulfill the duties listed in the Job Description. (Ramos Decl. ¶ 19; Martinez Depo. 155:10-21.) However, as noted above, genuine issues exist as to whether the Job Description reflects the essential functions of a DC Laborer and whether lifting heavy objects is a marginal function. Those same conflicts in the record apply here and place into dispute whether every requirement in the Job Description is essential to the trainer position.

Moreover, aside from citations to the Job Description, Ashley Furniture proffers no other evidence of a trainer's essential functions. By contrast, Mr. Robertson testified in his deposition that he could have worked as a trainer to perform duties that do not require heavy lifting. (Pl.'s Depo. 131:16-25.) He also testified that he had trained new workers even after he was injured. (Id. 130:13-131:4.) Drawing all inferences in Mr. Robertson's favor, a reasonable jury could find that a continual trainer need not perform every requirement listed in the Job Description. Accordingly, Ashley Furniture has failed to meet its burden of showing that no reasonable jury would conclude that reassignment as a continual trainer was reasonable.

**CIVIL MINUTES—GENERAL**                    Initials of Deputy Clerk mg

### ii.     Lead of Case Goods Receiving Department

As with the continual trainer position, Ashley Furniture contends that a promotion to Lead was unreasonable because a Lead must perform the same physical requirements as a DC Laborer.  (Mot. at 6, 12; DSUF ¶ 62.)

For the same reasons discussed above, the Court finds that Ashley Furniture has not met its burden for summary judgment.  Ashley Furniture cites statements and testimony from Ms. Ramos and Mr. Martinez that a Lead must perform all the requirements in the Job Description. (Ramos Decl. ¶ 20; Martinez Decl. ¶ 7.)  But, as discussed above, whether the Job Description applies to different roles in various departments is materially disputed.  Like with the continual trainer position, Ashley Furniture has not submitted evidence other than the Job Description of a Lead's essential functions.  On the other hand, Mr. Robertson testified in his deposition that he had "never really [seen] a lead lift" and described his understanding of a Lead's job as one who "sit[s] at a desk and … give[s] out doors, and if someone have [sic] a problem, they fix the problem."  (Pl.'s Depo. 157:13-17, 157:22-158:4.)  Mr. Barragan testified that when he was a Lead, he would assist the supervisor by "recording the daily productivity or assisting hands-on with the unloading process."  (Barragan Depo. 20:3-12.)  On this record, a reasonable jury could conclude that a Lead need not lift, carry, and manipulate heavy objects up to 100 pounds and 250 pounds or perform all of the requirements listed in the Job Description.

### iii.     Office Job

Ashley Furniture next asserts that reassignment to an office job was unreasonable because Mr. Robertson failed to identify a specific position and show that he held the requisite experience and qualifications for such a position.  (Mot. at 6, 12; DSUF ¶¶ 64–65.)

The Court finds that Mr. Robertson fails to materially dispute either of these assertions. It is undisputed that to be considered for an "office job," Mr. Robertson was "required to check the available alternative positions at Ashley at the time and apply as all employee[s] would, based upon his qualifications for a specific available position."  (DSUF ¶ 65; Ramos Decl. ¶ 21.)  In his deposition, however, Mr. Robertson testified that he did not know what office jobs were available at the time.  (Pl.'s Depo. 132:6-10.)  He testified that he had just seen individuals in an office "doing little pushing on a computer and dealing with paperwork."  (Id. 132:6-12.)  Under these facts, no reasonable jury would conclude that Mr. Robertson had identified a specific office job or had demonstrated his ability to perform that job.  The Court GRANTS IN PART the Motion to the extent that Count One rests on a theory that Mr. Robertson could perform the essential functions of his job with an accommodation in the form of a reassignment to an office job.

### iv.     Scanner

Ashley Furniture also argues that an accommodation in the form of a reassignment to a "scanner" position was unreasonable because the position does not exist.  (Mot. at 6, 15.)  It is undisputed that Mr. Robertson described a scanner as one who would "scan[] everything that

came off the truck." (DSUF ¶ 68; Pl.'s Depo. 151:13-25.) According to Ashley Furniture, this task is an essential function of the DC Laborer job, not of a separate role. (Ramos Decl. ¶ 23.)

Mr. Robertson argues that he has created a triable issue of fact. In his deposition, he testified that sometimes when a group of employees unloaded a truck, one person would "just scan." (Pl.'s Depo. 151:13-21.) He further testified that there were others in his department whose "only job [was] to scan." (Id. 152:2-7.) He also testified that he had spent an entire shift scanning without unloading boxes, including when he was on light duty. (Id. 155:3-157:6.)

While somewhat of a close call, the Court finds that Mr. Robertson has presented sufficient evidence to demonstrate a genuine dispute of material fact. A reasonable jury could infer from the record that a "scanner" is not just a function of the DC Laborer role because Mr. Robertson had scanned items as a DC Laborer and while on light duty. Moreover, construing all inferences in Mr. Robertson's favor, a reasonable jury could find that a "scanner" was a separate position given the numerous positions to which the DC Laborer Job Description applied. Accordingly, a reasonable jury could conclude that a reassignment as a "scanner" was possible and, therefore, reasonable.

### v. Continued Modified Duty

Ashley Furniture finally asserts that Mr. Robertson's requested accommodation of continued modified duty was unreasonable because it "did not have indefinite modified duty positions available," only temporary light duty positions. (Mot. at 6, 16.) Mr. Robertson responds that this contention is misleading because Ashley Furniture essentially creates a new position every time it places an employee on temporary light-duty. (Opp'n at 11–12.)

The Court finds that Mr. Robertson fails to raise a triable issue of fact. According to Ms. Ramos, only "workers who were temporarily disabled were eligible" for modified duty positions. (Ramos Decl. ¶ 22.) Mr. Robertson proffers his deposition testimony, in which he testified that Ashley Furniture "had a lot of people on light duty walking around cleaning. So that could have been a job." (Pl.'s Depo. 137:23-138:7.) But this fact does not contradict the assertion that only employees with a temporary disability qualify for modified duty. Mr. Robertson's citations to the deposition testimonies of Sonia Castro, Ashley Furniture's designated 30(b)(6) witness, and Mr. Barragan also fail to directly repudiate Ashley Furniture's eligibility requirement. Accordingly, the Court finds that no reasonable jury could conclude that continued modified or light duty was a reasonable accommodation. The Court GRANTS IN PART the Motion to the extent that Count One rests on a theory that Mr. Robertson could perform the essential functions of his job with an accommodation in the form of continued modified duty.

In sum, the Court GRANTS IN PART the Motion on the second element of Mr. Robertson's disability discrimination claim to the extent that he claims he could perform the essential functions of his job with the requested accommodations of (1) reassignment to an office job and (2) continued modified duty. Otherwise, the Court DENIES the Motion on the second element.

### c.  Adverse Employment Action

Under the third element of a FEHA disability discrimination claim, the employer must have taken an adverse employment action "because of" an employee's disability.  Cal. Gov't Code § 12940(a).  The disability must have been "a substantial motivating factor" for the employment decision.  <u>Harris v. City of Santa Monica</u>, 56 Cal. 4th 203, 214 (2013).  Because intentional discrimination is an "elusive factual question," a "plaintiff need produce very little evidence of discriminatory motive to raise a genuine issue of fact."[4]  <u>Mustafa v. Clark Cnty. Sch. Dist.</u>, 157 F.3d 1169, 1180 (9th Cir. 1998).

Mr. Robertson alleges that he suffered an adverse employment action when Ashley Furniture terminated his employment.  (Compl. ¶¶ 18–19.)  Ashley Furniture argues that Mr. Robertson cannot prove that this decision was substantially motivated by his disability because his "inability to use his bilateral upper extremities in the manner required by the position was the reason for his termination."  (Mot. at 13.)

The Court finds that this issue cannot be resolved at this stage.  There is ample evidence in the record that Ashley Furniture knew of Mr. Robertson's disability.  (DSUF ¶¶ 7, 9–11, 15, 21–22.)  It is undisputed that Mr. Martinez placed Mr. Robertson on leave the day after Mr. Robertson reported his second injury in October 2019.  (PSUF ¶ 24.)  This evidence sufficiently raises an inference of a causal link between the decision to terminate Mr. Robertson's disability and his injury.

Ashley Furniture contends that the record shows that it terminated Mr. Robertson because he was unable to perform the essential functions of his job and no reasonable accommodations existed.  (Mot. at 13.)  However, as discussed above, material disputes exist on these issues.  Because a jury could find that Mr. Robertson was able to perform the essential functions of his job with reasonable accommodations, a reasonable jury could also conclude that Ashley Furniture's decision to terminate Mr. Robertson's employment due to his medical restrictions was discriminatory.  Ashley Furniture also asserts that it could not have acted with animus since it attempted to accommodate him with modified work before his termination.  (Mot. at 13; DSUF ¶ 22.)  But the fact that Ashley Furniture previously tried to accommodate Mr. Robertson does not preclude a finding that the termination was not substantially motivated by his disability.  Accordingly, the Court DENIES the Motion on the third element.

---

[4] Ashley Furniture erroneously asserts that Mr. Robertson must prove this element "by substantial evidence."  (Mot. at 13.)  Mr. Robertson's "prima facie burden is light; the evidence necessary to sustain the burden is minimal."  <u>McInteer v. Ashley Distrib. Servs., Ltd.</u>, 40 F. Supp. 3d 1269, 1281 (C.D. Cal. 2014).  However, to demonstrate pretext, Mr. Robertson must "produc[e] substantial responsive evidence."  <u>Lucent Techs., Inc.</u>, 642 F.3d at 746.

Because the Court finds that Mr. Robertson makes a prima facie case, a presumption of discrimination arises.  Harris, 56 Cal. 4th at 214.  Ashley Furniture must "rebut the presumption by producing evidence that its action was taken for a legitimate, nondiscriminatory reason."  Id.

### 2.  Legitimate, Nondiscriminatory Reason

To demonstrate a legitimate, nondiscriminatory reason for its decision to terminate, Ashley Furniture "must show that the procedure by which [Mr. Robertson] was terminated was validly and fairly devised and administered to serve a legitimate business purpose."  Lucent Techs., Inc., 642 F.3d at 746–47 (quoting Hanson v. Lucky Stores, Inc., 74 Cal. App. 4th 215, 224 (1999)).  "[L]egitimate reasons are reasons that are facially unrelated to prohibited bias, and which, if true, would thus preclude a finding of discrimination."  Reeves v. MV Transp., Inc., 186 Cal. App. 4th 666, 673 (2010) (quotations omitted and emphasis in original).  If the employer meets this burden, "the employee must then 'offer substantial evidence that the employer's stated nondiscriminatory reason for the adverse action was untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.'"  Id. (quoting Hersant v. Department of Social Services, 57 Cal. App. 4th 997, 1004-05 (1997)).

Ashley Furniture again asserts that it terminated Mr. Robertson's employment because he was unable to perform the essential functions of his job.  (Mot. at 13; Reply at 6.)  However, "[i]f triable issues of material fact exist whether discrimination was a substantial motivating reason for the employer's adverse employment action, even if the employer's professed legitimate reason has not been disputed, the FEHA claim is not properly resolved on summary judgment."  Husman v. Toyota Motor Credit Corp., 12 Cal. App. 5th 1168, 1186 (2017).  Accordingly, the Court declines to resolve whether Ashley Furniture has proffered a legitimate, nondiscriminatory reason or whether it was pretextual at this stage.

In sum, Mr. Robertson has raised triable issues of fact on each element of his disability discrimination claim.  As discussed above, the Court GRANTS IN PART the Motion on the second element of Mr. Robertson's disability discrimination claim to the extent that he claims he could perform the essential functions of his job with the requested accommodations of (1) reassignment to an office job and (2) continued modified duty.  The Court DENIES the Motion to the remaining theories and elements on Count One.

### B.  Failure to Accommodate Disability (Count Two)

In Count Two, Mr. Robertson alleges that Ashley Furniture failed to accommodate his disability.  (Compl. ¶¶ 23–30.)

Under FEHA, an employer's failure to reasonably accommodate a disabled employee is a violation of the statute in and of itself.  Cal. Gov't Code § 12940(m).  The elements of a failure to accommodate claim are (1) the plaintiff has a disability under FEHA, (2) the plaintiff is qualified to perform the essential functions of the position, and (3) the employer failed to reasonably

accommodate the plaintiff's disability. <u>Scotch v. Art Institute of Cal.</u>, 173 Cal. App. 4th 986, 1009–10 (2009). "'Reasonable accommodation' means a 'modification or adjustment to the workplace that enables a disabled employee to perform the essential functions of the job held or desired.'" <u>Achal v. Gate Groumet, Inc.</u>, 114 F. Supp. 3d 781, (N.D. Cal. 2015); Cal. Gov't Code § 12926(p). An employer who fails to continue to accommodate an employee's need may be held liable. <u>See</u> <u>Nigro v. Sears, Roebuck & Co.</u>, 784 F.3d 495, 498 (9th Cir. 2015).

Ashley Furniture argues that Mr. Robertson's failure to accommodate claim falls short for the same reasons as his disability discrimination claim. (Mot. at 14–17.) Specifically, it argues that he was not qualified to perform the essential functions of his position and no reasonable accommodation was available. (<u>Id.</u>) The Court rejects this argument for the same reasons stated above. Accordingly, the Court DENIES the Motion on Count Two.

## C. Failure to Engage in Interactive Process (Count Three)

In Count Three, Mr. Robertson asserts a claim for failure to engage in the interactive process under FEHA. (Compl. ¶¶ 31–38.) Ashley Furniture argues that no reasonable jury would conclude that it failed to engage in a good faith interactive process when it had provided Mr. Robertson with modified work, continued to communicate with him, held an interactive process meeting on October 16, 2019, and continued to communicate with Mr. Robertson after the meeting. (Mot. at 18–19.)

FEHA makes it unlawful for an employer "to fail to engage in a timely, good faith, interactive process with the employee … to determine effective reasonable accommodations, if any, in response to a request for accommodation by an employee …." Cal. Gov't Code § 12940(n). To state a prima facie case for failure to accommodate and failure to engage in the interactive process, a plaintiff must also demonstrate that she "tender[ed] a specific request for a necessary accommodation." <u>King v. United Parcel Serv., Inc.</u>, 152 Cal. App. 4th 426, 443 (2007) (quoting <u>Spitzer v. Good Guys, Inc.</u>, 80 Cal. App. 4th 1376, 1384 (2000)). "FEHA requires an informal process with the employee to attempt to identify reasonable accommodations, not necessarily ritualized discussions." <u>Nealy v. City of Santa Monica</u>, 234 Cal. App. 4th 359, 379 (2015). "Both employer and employee have the obligation 'to keep communications open' and neither has 'a right to obstruct the process.'" <u>Scotch v. Art Inst. of Cal.</u>, 173 Cal. App. 4th 986, 1014 (2009) (quoting <u>Jensen v. Wells Fargo Bank</u>, 85 Cal. App. 4th 245, 266 (2000)). "Once the interactive process is initiated, the employer's obligation to engage in the process in good faith is continuous." <u>Id.</u> at 1013.

The Court finds that genuine issues of material fact exist on whether Ashley Furniture engaged in a good faith interactive process with Mr. Robertson. The record contains evidence that supports Ashley Furniture's position. For example, after Mr. Robertson's first injury on February 21, 2019, Ashley Furniture sent him to numerous medical evaluations. (DSUF ¶¶ 7, 11–13.) When Mr. Martinez received Mr. Robertson's permanent work restrictions for his left hand, he expressed an intent to hold a meeting with Mr. Robertson to conduct the interactive process. (Martinez Decl. ¶ 17; Cox Decl., Ex. L.) After Mr. Robertson's second injury on

September 22, 2019, Mr. Martinez conducted an interactive process meeting on October 16, 2019. (DSUF ¶ 47; Martinez Depo. 56: 7-12.)

But the record also contains evidence favorable to Mr. Robertson. During the October 16, 2019 meeting, Mr. Martinez reviewed only the DC Laborer Job Description with Mr. Robertson. (Martinez Decl. ¶ 21; PSGD ¶ 47.) As noted above, there are material disputes about whether these requirements apply to Mr. Robertson's job. Mr. Martinez also testified that in that same meeting, Mr. Robertson suggested that he could work as a trainer. (Martinez Depo. 103:9-18.) Though Mr. Martinez noted this request on a form, Mr. Robertson testified that Mr. Martinez never discussed this role or any other positions with him. (Id.; Robertson Depo. 160:1-161:5.) Moreover, the Court has found that factual issues remain as to the reasonableness of Mr. Robertson's requested accommodations. A reasonable jury could find that Ashley Furniture failed to consider the reasonable accommodations that Mr. Robertson had requested. In addition, Mr. Robertson testified that Mr. Martinez evaded his phone calls after the meeting and after Mr. Martinez sent him a letter on October 31, 2019 that Ashley Furniture would not accommodate his medical restrictions. (Robertson Depo. 160:15-161:5; Martinez Decl. ¶ 23; Martinez Decl., Ex. C.) A jury could infer that Ashley Furniture failed its obligation to keep communications open and to continuously engage in the interactive process and caused a breakdown in the interactive process. Accordingly, the Court concludes that a reasonable jury could find from these facts that Ashley Furniture did not participate in a good faith interactive process. The Court DENIES the Motion on Count Three.

## D. Harassment / Hostile Work Environment (Count Four)

In Count Four, Mr. Robertson claims that after his first injury and assignment to modified duty, Ashley Furniture subjected him to harassment because of his disability. (Compl. ¶¶ 39–46.) He asserts that the following conduct created a hostile working environment: (1) Mr. Barragan, a supervisor in the Shipping Department, called him "light duty" instead of his name; (2) Mr. Barragan would give him "unreasonable job duties"; (3) Mr. Robertson was forced to wear a vest while on light duty; and (4) when Mr. Robertson arrived to work late, he was written up for a full point instead of a third of a point as required by Ashley Furniture's policy. (Id. ¶ 40; Opp'n at 20.) Ashley Furniture argues that Mr. Robertson fails to prove that any of these actions were so severe or pervasive that it created a hostile work environment. (Mot. at 21–23.)

"Harassment in the form of a hostile work environment constitutes unlawful discrimination in violation of … FEHA." Leland v. City & Cnty. of S.F., 576 F. Supp. 2d 1079, 1100 (N.D. Cal. 2008). An employer must "take all reasonable steps necessary to prevent … harassment from occurring." Cal. Gov't Code § 12940(k). Harassment "consists of actions outside the scope of job duties which are not a type necessary to business and personnel management." Reno v. Baird, 18 Cal. 4th 640, 647 (1998). It "focuses on situations in which the social environment of the workplace becomes intolerable." Roby v. McKesson Corp., 47 Cal. 4th 686, 706 (2009). "When the harasser is a supervisor, the employer is strictly liable for the supervisor's actions." Id. at 707.

"To establish a claim for harassment, a plaintiff must demonstrate that: (1) she is a member of a protected group; (2) she was subjected to harassment because she belonged to this group; and (3) the alleged harassment was so severe [or pervasive] that it created a hostile work environment." Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1244 (9th Cir. 2013) (citing Aguilar v. Avis Rent a Car Sys., Inc., 21 Cal. 4th 121 (1999)); Aguilar, 21 Cal. 4th 121, 138 (noting that conduct must be "sufficiently severe or pervasive"). "[T]he plaintiff must show that her work environment was both subjectively and objectively hostile." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1034 (9th Cir. 2005). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 755, 788 (1998)).

The Court finds that Mr. Robertson has raised triable issues of fact which preclude summary judgment. It is undisputed that Mr. Barragan called Mr. Robertson "light duty" instead of his name on at least two occasions. (DSUF ¶ 91; PSUF ¶ 14.) Ashley Furniture does not contest Mr. Robertson's testimony that Mr. Barragan assigned him to "a special job just for [him]," such as scraping stickers off pallet jacks and forklifts. (Robertson Depo. 69:19-71:10; DSUF ¶ 90.) Nor does it dispute his testimony that he believed that Mr. Barragan had singled him out. (PSUF ¶ 13; Pl.'s Depo. 57:22-58:4.) Ashley Furniture contends that any purported conduct only occurred twice over three days and was not pervasive. (DSUF ¶¶ 90–91, 97, 102.) But Mr. Robertson asserts that despite the short timeframe, he was harassed whenever he encountered Mr. Barragan and that it only stopped because he was terminated shortly after he reported the harassment. (PSGD ¶¶ 90–91, 97, 101–103.) Construing all inferences in Mr. Robertson's favor, a reasonable jury could find that Mr. Barragan's conduct was not isolated or sporadic.

Additional evidence supports an inference of pervasive harassment. It is undisputed that all employees on modified duty must wear a reflective vest and that Mr. Robertson believed this practice was discriminatory. (DSUF ¶ 88; PSGD ¶¶ 15, 27.) Mr. Robertson creates a factual dispute as to whether the vest policy was intended to harass. Ashley Furniture asserts that the vests are "for safety reasons (to make him easily visible to employees operating heavy equipment)." (Ramos Decl. ¶ 26; Martinez Decl. ¶ 15.) However, Mr. Robertson submits evidence that non-modified duty employees on the floor were never required to wear a vest. (Castro Depo. 184:1-20.) A reasonable jury could infer that identification, not safety, was the primary purpose of the vests. A genuine issue of fact also exists as to whether an Ashley Furniture supervisor wrote up Mr. Robertson for a full point or one-third of a point for leaving his shift early pursuant to Ashley Furniture's policy. (PSUF ¶ 16; Ramos Decl. ¶ 25; Castro Depo. 130:12-133:6.) Under the totality of circumstances, a reasonable jury could conclude that these incidents created a hostile work environment for Mr. Robertson. Accordingly, the Court DENIES the Motion on Count Four.

//
//

**E.  Retaliation (Count Five)**

In Count Five, Mr. Robertson alleges that Ashley Furniture retaliated against him when it "terminated him as a result of requesting a reasonable accommodation for his disability."[5] (Compl. ¶ 49.)  He does not assert retaliation for reporting harassment.  (DSUF ¶ 105.)  Ashley Furniture argues that Mr. Robertson fails to show that it terminated his employment because he had requested accommodations.  (Mot. at 23–24.)  It argues that it terminated his employment because he was unable to perform the essential functions of his job.  (Id. at 25.)

An employer may not discriminate against any person because "the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part."  Cal. Gov't Code § 12940(h).  "To establish a prima facie case of retaliation under [] FEHA, a plaintiff must show (1) he or she engaged in a protected activity, (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."  Scotch, 173 Cal. App. 4th at 1020 (internal quotation omitted).  "In assessing the viability of FEHA retaliation claims in the context of motions for summary judgment, California courts apply the same burden-shifting analysis [of McDonnell-Douglas] discussed above."  Day v. Sears Holdings Corp., 930 F. Supp. 2d 1146, 1176 (C.D. Cal. 2013).

The Court finds that summary judgment is not appropriate on this claim.  As discussed above, triable issues remain on whether Ashley Furniture terminated Mr. Robertson's employment because of his disability.  Drawing all inferences in Mr. Robertson's favor, a reasonable jury could also conclude from the record that Ashley Furniture retaliated against Mr. Robertson when he sustained his second injury and requested accommodations.  Accordingly, the Court DENIES the Motion on Count Five.

**F.  Wrongful Termination in Violation of Public Policy (Count Six)**

"Under California common law, although 'an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or a purpose that contravenes fundamental public policy.'"  Lucent Techs., Inc., 642 F.3d at 748 (quoting Silo v. CHW Med. Found., 27 Cal. 4th 1097, 1104 (2002)).  "[T]his public policy exception to the at-will employment rule must be based on policies 'carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions.'"  Silo, 27 Cal. 4th at 1104 (internal citation omitted).  "The elements of this tort are (1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination."  Lucent Techs., Inc., 642 F.3d at 749.  "[D]isability discrimination can form the basis of a common law wrongful discharge claim."  City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1161 (1998).

---

[5] In the Opposition, Mr. Robertson also asserts that he may have been terminated because he complained that the vest policy for modified duty employees was discriminatory.  (Opp'n at 22.)  Mr. Robertson never alleged this theory in the Complaint.  Accordingly, it cannot serve as the basis of his retaliation claim.

Here, disability discrimination forms the basis of Mr. Robertson's wrongful termination claim.  (Compl. ¶¶ 55–56.)  Because Count Six "is predicated on the existence of discrimination, which is a triable issue of fact as discussed above, it follows that this claim must be submitted to a jury."  Gardner, 114 F. Supp. 3d at 905.

## V.   CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART the Motion.  The Court VACATES the hearing set for September 26, 2022.

**IT IS SO ORDERED.**